REINHARDT, Circuit Judge,
concurring in the judgment:
I concur, reluctantly. The Supreme Court has recently discovered that the Constitution prevents courts from imposing disproportionate punitive damages in tort cases. If the Court continues to adhere to its newfound view, it would be well advised to apply the same rule to prevent disproportionate penalties, from being imposed on consumers when they breach contracts of adhesion.[1] Consumers must frequently enter into such one-sided contracts if they are to obtain many of the practical necessities of modern life, such as credit cards, cellular phones, utilities, and other vital consumer goods. Applied to such contracts, the Court’s most recent substantive due process rule — which has to date served primarily to protect wealthy corporations from liability for repeated wrongdoing — would also protect ordinary consumers from paying excessive court-enforced damages for minimal breaches of contract.[2] These excessive penalties are currently paid to large national business entities which, each year, collect billions of dollars in late fees alone. They reflect a compensatory to penalty damages ratio higher than 1 to 100,[3] which far exceeds the ratio of non-punitive to punitive damages that the Court has held to be prohibited by the Constitution in tort cases. In sum, if due process is violated when courts award disproportionate punitive damages in the tort context, due process is equally violated when courts enforce the punitive and substantially more disproportionate penalty clauses in contracts of adhesion.
I ultimately agree with the opinion of the court, however, that the Constitution has not yet been so interpreted. Thus, I cannot' disagree with the ultimate decision. I do believe, however, that the proposition I discuss deserves further exploration and analysis, and that, should the new Supreme Court doctrine continue in effect, the extension of that doctrine as requested by Cardholders should eventually become the law under the Due Process Clause.
Constitutional interpretation is an evolutionary process. “[T]hat our understanding of the Constitution does change from time to time has been settled since John Marshall breathed life into its text.” Roper v. Simmons, 543 U.S. 551, 587, 125 S.Ct. 1188, 161 L.Ed.2d 1 (2005) (Stevens, J., concurring). Otherwise, the Constitution’s “general principles would have little value, and be converted by precedent into impotent and lifeless formulas.” Weems v. United States, 217 U.S. 349, 373, 30 S.Ct. 544, 54 L.Ed. 793 (1910). Many, if not most, of the Supreme Court’s greatest de *1029 cisions are those in which the Court has interpreted the Constitution as a living document, capable of adapting to changing times. See, e.g., United States v. Windsor, — U.S.-, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Brown v. Bd. of Educ., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); West Virginia Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).
This is a constitutional case of first impression. It is an attempt by a group of cardholders to have a new constitutional doctrine applied even-handedly. Their proposed rule would protect consumers from excessive penalties just as the current rule protects corporate and business entities from excessive punitive damages. Constitutional evolution requires continuous evaluation of newly established principles to ensure that changes occur within the framework of fairness and equality. Such must be the case here.
Until recently, no one other than a few law professors would have thought that substantive due process significantly limited punitive damages awards or determined which punitive verdicts against corporate tort-feasors were too large. See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 602, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (Scalia, J., dissenting) (describing “federal punitive damages law” as a “new field created by today’s decision”). Indeed, the Court declared decades ago its “abandonment of the use of the ‘vague contours’ of the Due Process Clause to nullify laws which a majority of the Court believed to be economically unwise.” Ferguson v. Skrupa, 372 U.S. 726, 731, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). See also Lochner v. New York, 198 U.S. 45, 75, 25 S.Ct. 539, 49 L.Ed. 937 (1905) (Holmes, J., dissenting) (“[A] Constitution is not intended to embody a particular economic theory, whether of paternalism and the organic relation of the citizen to the state or of laissez faire.”). Nor did it appear until very recently that the “vague contours” of the Due Process Clause served to measure the constitutionality of particular punitive damages awards.
Beginning in the mid-1980s, however, a smattering of Supreme Court dicta began to suggest that one or more Justices believed that such limitations might be necessary as a constitutional response to a growing trend of punitive damages “run wild.” See Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 9-12, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (collecting dicta from “recent years” in which “[the] Court and individual Justices” “expressed doubts about the constitutionality of certain punitive damages awards”). In Haslip, the Court began developing a new and (now) robust jurisprudence in which awards of punitive damages in the tort context are examined to determine whether they comport with due process. See Haslip, 499 U.S. at 18, 111 S.Ct. 1032 (suggesting the possibility that punitive damage awards in which jurors are given unlimited discretion “jar one’s constitutional sensibilities,” but finding no constitutional flaw with a punitive damages award 200 times greater than the compensatory damages awarded); TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (plurality opinion) (citing Haslip for the proposition that due process might constrain the size of some punitive damages awards, but upholding an award 500 times in excess of actual damages); BMW, 517 U.S. at 585-86, 116 S.Ct. 1589 (holding, for the first time, that a punitive damages award was “grossly excessive” and therefore violated due process where the award was 200 times greater, than the actual damages); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425, 123 S.Ct. *1030 1513, 155 L.Ed.2d 585 (2003) (concluding, somewhat surprisingly, that “[o]ur jurisprudence and the principles it has now established demonstrate ... that, in practice, few [punitive] awards exceeding a single-digit ratio between punitive and compensatory damages ... will satisfy due process,” and citing a one-to-four ratio between compensatory and punitive damages as a non-binding but “instructive” constitutional line). Regardless of the impulses that motivated the Court to adopt its new constitutional doctrine, to date that doctrine has served primarily to protect large corporations from liability in cases in which they have repeatedly engaged in patterns of misconduct against vulnerable individuals.[4]
Whether or not the Court’s discovery that the Constitution limits punitive damages is well founded, it is unlikely that the Due Process Clause was intended to operate as inequitably as it does at present. Big businesses are protected against “excessive” punitive damages awards for their willful misconduct, even as consumers are afforded no constitutional protection against disproportionate damages for breaches of contracts of adhesion — contracts that are not voluntary in any worthwhile sense of the term. Although the ultimate cost to each consumer may be relatively small, the benefits to credit card companies of such excessive punishment for minor breaches of contract are significant: in 2002, for example, credit card companies collected $7.3 billion in late fees. See Shiffrin, Are Credit Card. Law Fees Unconstitutional?, 15 Wm. & Mary Bill Rts. J. at 460.
The Court’s punitive damages doctrine has both procedural and substantive aspects. See, e.g., State Farm, 538 U.S. at 416, 123 S.Ct. 1513 (“[T]here are procedural and substantive constitutional limitations on [punitive damage] awards.”). The procedural aspect — which principally involves fair notice of the extent of the penalty that the state may impose — is not at issue here.[5] The substantive aspect, in contrast, is directly implicated. This critical part of the Court’s new jurisprudence provides that punitive damages may not be “grossly excessive” with respect to the actual harm caused by the tortfeasor because such disproportionate awards “further[] no legitimate purpose and constitute[ ] an arbitrary deprivation of property.” State Farm, 538 U.S. at 416, 123 S.Ct. 1513; see Gore, 517 U.S. at 596, 116 S.Ct. 1589 (Breyer, J., concurring) (“The severe lack of proportionality between the size of the award and the underlying punitive damages objectives shows that the award falls into the category of ‘gross excessiveness’ .... ”). The Court has explained that there is something “jar[ring]” to one’s “constitutional sensibilities” about a court sanctioning any sort of punishment in a civil case when that punishment vastly exceeds the harm done by the party being punished. Haslip, 499 U.S. at 18, 111 S.Ct. 1032. Such a jarring of constitutional sensibilities may occur even when the penalties imposed are foreseeable. See St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63, 67, 40 S.Ct. 71, 64 L.Ed. 139 (1919).
These principles, if indeed embodied in the Constitution, should also limit courts’ ability to enforce grossly excessive liquidated damages provisions that inflict pun *1031 ishment upon consumers far in excess of any damage that they have caused by minimally breaching their contracts of adhesion.[6] A grossly disproportionate punishment is a grossly disproportionate punishment, regardless of whether the breaching party has previously “acquiesced” to such punishment — to the extent, that is, that a signatory to a contract of adhesion can ever be said to have “acquiesced” to all of its terms.[7] Substantive due process should, at the very least, bar judicial enforcement of contractual penalty clauses when such clauses are so disproportionate to the damage caused by the breach that the damages would be impermissible as civil penalties in the tort context.[8] This would hardly be the first time that courts refused to enforce private contracts because such enforcement would constitute unconstitutional state action. Cf. Shelley v. Kraemer, 334 U.S. 1, 20, 68 5.Ct. 836, 92 L.Ed. 1161 (1948).[9]
The judiciary is just beginning to explore the principles that the Court has offered in justification of its new constitutional rule and the time for an expansion of its punitive damages jurisprudence may not yet have arrived. I believe, however, that in the end the principles of fairness and equality will dictate that consumers are entitled to (at least) the same constitutional rights as corporations.

.Punitive damages are not awarded in contract actions, except insofar as contract actions "contain elements that enable the court to regard them as falling within the field of tort.” 11 Corbin on Contracts § 59.2 (2013). When punitive damages are awarded in hybrid contract-tort actions, they are subject to the constitutional limitations imposed on punitive damages in tort cases. Id. Applying the Court’s new constitutional rule to contracts of adhesion would expand the scope of punitive damages limitation.

. See Seana Valentine Shiffrin, Are Credit Card Late Pees Unconstitutional?, 15 Wm. & Mary Bill Rts. J. 457, 460 (2006).

. See id. at 477-80.

. See, e.g., Philip Morris USA v. Williams, 549 U.S. 346, 127 S.Ct 1057, 166 L.Ed.2d 940 (2007). See also Martha T. McCluskey, Con-stitutionalizing Class Inequality: Due Process in State Farm, 56 Buff. L.Rev. 1035 (2008).

. As the Cardholders concede, the penalties imposed in contracts of adhesion, even if disproportionate, are known in advance.

. In cases where payments are an hour to a few days late, the only actual damage to a credit card company would be the lost time-value of money, since it typically would not issue collection letters or phone calls on such a brief time frame and would thus incur no expense, however minimal, as a result. But the lost time-value of the money is usually already compensated for by the interest on the balance, which is often increased when late fees are imposed. In such cases, the compensatory-punitive damages ratio often lands far above ratios that would undoubtedly be deemed invalid in the tort context. See Shiffrin, Are Credit Card Late Fees Unconstitutional?, 15 Wm. & Mary Bill Rts. J. at 477-80.

. Consumers presented with these contracts must either "agree” to their harsh terms or lives without necessities of modern life, including access to credit, utilities, and the principal means of communication.

. The fact that the contract terms at issue are often labeled liquidated damages provisions is irrelevant. When provisions of contracts of adhesion require the imposition of monetary punishment that is punitive in character and grossly disproportionate, they may not be enforced.

. Cardholders also offer an alternative theory of state action. They argue that state statutes abrogating the common law prohibition on penalty clauses, taken in conjunction with regulations promulgated pursuant to the National Bank Act which allow credit card companies to export the law of their home states, permit the imposition of the disproportionate penalties in violation of the Constitution. Under common law, they argue, this problem would not arise because such fees would constitute an unlawful penalty clause. See Shiff-rin, Are Credit Card Late Fees Unconstitutional?, 15 Wm. & Mary Bill Rts. J. at 487-91.